# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs February 23, 2010

## DARRELL W. LUNSFORD v. HOWARD CARLTON, WARDEN

**Direct Appeal from the Criminal Court for Johnson County**
**No. 5185      Robert E. Cupp, Judge**

**No. E2009-01259-CCA-R3-HC - Filed August 9, 2010**

The Petitioner, Darrell W. Lunsford, appeals the dismissal of his petition for a writ of habeas corpus, in which he alleged that his sentence was illegal.   Upon review, we affirm the judgment of the habeas corpus court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., J., joined.  JOSEPH M. TIPTON, P.J., filed a dissenting opinion.

Darrell W. Lunsford, Pikeville, Tennessee, Pro se.

Robert E. Cooper, Jr., Attorney General and Reporter; and Rachel West Harmon, Assistant Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

On November 15, 2007, the Petitioner filed a petition for a writ of habeas corpus, contending that as a result of his March 18, 1993 guilty plea to first degree murder, the trial court sentenced him to serve his life sentence at thirty percent, a sentence not authorized by statute.  The Petitioner maintained that his sentence was therefore void.

The State filed a motion to dismiss the petition, alleging that the Petitioner failed to establish that the thirty percent release eligibility was a "material element" of his guilty plea agreement.  The State maintained that the transcript of the guilty plea hearing, which was

attached to the petition, revealed that "the prosecutor mentioned nothing about release eligibility status when making the State's sentencing recommendation to the court."

The habeas corpus court agreed with the State, finding:

> [I]t is obvious that the petitioner is not entitled to withdraw his guilty plea. There is nothing in this record to suggest that the petitioner's release eligibility was "a material element" of his guilty plea, as required by [Summers v. State, 212 S.W.3d 251, 255 (Tenn. 2007)].

On appeal, the Petitioner challenges the habeas corpus court's ruling. He argues that "he was only pleading guilty in return for the agreed upon sentence of life in prison with a parole eligibility of 30%. Said 30% parole eligibility was a bargained for element of the plea agreement."

## II. Analysis

Initially, we note that the determination of whether to grant habeas corpus relief is a question of law. Summers v. State, 212 S.W.3d 251, 255 (Tenn. 2007). As such, we will review the trial court's findings de novo without a presumption of correctness. Id. Moreover, it is the petitioner's burden to demonstrate, by a preponderance of the evidence, "that the sentence is void or that the confinement is illegal." Wyatt v. State, 24 S.W.3d 319, 322 (Tenn. 2000).

Article I, section 15 of the Tennessee Constitution guarantees an accused the right to seek habeas corpus relief. See Taylor v. State, 995 S.W.2d 78, 83 (Tenn. 1999). However, "[s]uch relief is available only when it appears from the face of the judgment or the record of the proceedings that a trial court was without jurisdiction to sentence a defendant or that a defendant's sentence of imprisonment or other restraint has expired." Wyatt, 24 S.W.3d at 322; see also Tenn. Code Ann. § 29-21-101 (2000). In other words, habeas corpus relief may be sought only when the judgment is void, not merely voidable. Taylor, 995 S.W.2d at 83. "A void judgment 'is one in which the judgment is facially invalid because the court lacked jurisdiction or authority to render the judgment or because the defendant's sentence has expired.' We have recognized that a sentence imposed in direct contravention of a statute, for example, is void and illegal." Stephenson v. Carlton, 28 S.W.3d 910, 911 (Tenn. 2000) (quoting Taylor, 995 S.W.2d at 83).

The Petitioner's guilty pleas were entered after the jury had been deliberating for almost four hours on whether the Petitioner was guilty of the charged offenses. The guilty plea transcript reflects that the following colloquy occurred regarding the pleas:

> [Trial Court]: So you are very much aware – on first degree murder it's life or death, and that depends on aggravating circumstances outweighing beyond a reasonable doubt all mitigating circumstances. You know that . . . penalty attaches both to the premeditated first degree murder, and it attaches also to felony first degree murder.
>
> You know that the range of penalties, I believe I told the jury, was eight to 12 on the especially aggravated burglary. You could be fined as much as $25,000 on that. You could be fined as much as $50,000 on a second degree murder conviction. The range on that is 15 to 25, I believe I told the jury.[1]
>
> On the misdemeanor theft you could be fined as much as $2,500, and you could be sentenced to as much as 11 months and 29 days.
>
> How sentences run is important, sir. If you suffer more than one conviction the jury would not decide how they run, that's for the court – for the Judge. There are reasons to run sentences consecutively; there are reasons to run them concurrently. More often they run [con]currently, which means all sentences run at the same time. So the greatest sentence you get is the only sentence you have, in effect. If you serve the greater one, anything smaller just falls by the wayside.
>
> In appropriate cases, sir, for good cause, sentences can be run consecutive under Gray v. State[, 538 S.W.2d 391 (Tenn. 1976)]. There are reasons for that. If they are run consecutively, sir, then you have the aggregate, whatever it adds up to be. And so that would enhance and increase the punishment.

---

[1] At the time of the Petitioner's trial, sentencing ranges were part of the jury instructions. See Tenn. Code Ann. § 40-35-210(b) (1993).

You are a standard, range one offender, I understand. You are a 30% offender, so you would – the law says that you serve 30% of the sentence. The law also says that because we have prison crowding that 40% of that is lopped off at the top, at the front end, so you won't serve 30%. 40% of that 30% is gone at the front by statute.

Actually, how long you would serve, sir, I cannot tell you. [Defense counsel] can't tell you, [The State] can't tell you, no one can tell you; we do not know. But the sentence that is imposed would be subject to the Department of Corrections. It would be entirely out of my hands, out of our hands. Did you understand that, sir?

The Petitioner responded affirmatively.

Later, in the presence of the jury, the following colloquy occurred:

[The State]: The recommendation of the State, is, Your Honor, that he receive life imprisonment on the first degree murder, and that he receives the maximum of 12 years on the aggravated burglary, and they are to run consecutively. As I understand the law, of course, he's pled guilty to felony murder, but those merge as a matter of law – they merge into one. There can only be one conviction.

[Trial Court]: It does merge, yes, sir.

[The State]: So that would be life plus 12 years, which is the maximum he can get under the law, other than death.

[Trial Court]: And 11-29 on the theft; is that what you said?

[The State]: Right, Your Honor, concurrent.

[Trial Court]: Stand up, please, Mr. Lunsford. Mr. Lunsford, is that the recommendation you expected would be made to me, sir?

[The Petitioner]: Yes, sir.

[Trial Court]: That's what you understood?

[The Petitioner]: Yes, sir.

On the Petitioner's judgment of conviction for first degree murder, both the first degree murder box and the standard Range I offender box are checked.[2] The judgment also reflects that the sentence is life. On appeal, the Petitioner argues that the judgment classifying him as a standard Range I offender is evidence that a condition of his plea was that he be required to serve only thirty percent of his life sentence in confinement. This contention however is not supported by the guilty plea transcript, which reflects that the Petitioner was informed that he was receiving a sentence of life for his first degree murder conviction. Additionally, we note the Petitioner did not attach the plea agreement to his petition.

In its order denying the Petitioner relief, the habeas corpus court noted that "the petitioner by his own admission says that the thirty (30%) percent release eligibility was illegally imposed. He does not claim that he ple[d] guilty in order to receive the thirty (30%) percent release eligibility." The court, therefore, found that the Petitioner failed to establish that the thirty percent portion of his sentence was a "material element" of his plea. We agree. The record reflects that when making the sentencing recommendation to the court, the State did not mention release eligibility. Further, the record reflects that the Petitioner entered his plea to avoid the death penalty. The habeas corpus court remanded the matter to the trial court for the entry of a corrected judgment, showing the correct sentence. Correction of the judgment is the only relief to which the Petitioner is entitled. Accordingly, we conclude that the habeas corpus court correctly denied the Petitioner habeas corpus relief.

### III. Conclusion

Based upon the foregoing, we affirm the judgment of the habeas corpus court.

_____
NORMA McGEE OGLE, JUDGE

---

[2] We further note that the judgment boxes are incorrectly checked to reflect both that the Petitioner pled guilty and that he was found guilty by a jury.